UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN THORPE CHRISTIE,<br><br>　　　　　　　　　　　Petitioner,<br>　v.<br>GREG SMITH, et al.,<br><br>　　　　　　　　　　　Respondents. | Case No. 3:11-cv-00581-MMD-VPC<br><br>ORDER |

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner. This matter comes before the Court on the merits of the petition.

**I.    PROCEDURAL HISTORY**

On February 20, 2008, petitioner was convicted, pursuant to a guilty plea, of one count each of grand larceny and burglary. (Exh. 37.)[1] Petitioner was adjudicated a habitual criminal and sentenced to two terms of 10 years to life in prison. (*Id.*) Petitioner appealed from his judgment of conviction. (Exh. 42.) By order filed March 4, 2009, the Nevada Supreme Court affirmed petitioner convictions. (Exh. 91.)

On June 24, 2009, petitioner filed a post-conviction habeas petition in the state district court. (Exh. 101.) The state district court denied the petition. (Exh. 153.) Petitioner appealed. (Exh. 171.) On June 8, 2011, the Nevada Supreme Court affirmed the denial of the post-conviction habeas petition. (Exh. 181.)

---

[1] The exhibits referenced in this order are found in the Court's record at dkt. nos. 20-29 and dkt. no. 47.

While his direct appeal was pending, petitioner filed a motion to withdraw his guilty plea on September 3, 2008. (Exh. 72.) The district court stayed the proceedings on the motion pending the outcome of petitioner's direct appeal. (Exh. 87.) Once the direct appeal concluded, the state district court struck the motion as a fugitive document. (Exh. 104.) Petitioner appealed that decision and the Nevada Supreme Court reversed the state district court's decision to strike the motion. (Exh. 119.) The Nevada Supreme Court's order, filed August 21, 2009, remanded the case to the state district court for consideration of the merits of the motion to withdraw the guilty plea. (*Id.*) On remand, the state district court denied the motion on its merits. (Exh. 182.) Petitioner appealed. (Exh. 202.) On October 8, 2012, the Nevada Supreme Court affirmed the denial of petitioner's motion to withdraw his guilty plea. (Exh. 205.) Remittitur issued on November 5, 2012. (Exh. 206.)

Petitioner dispatched his federal habeas petition to this Court on August 8, 2011. (Dkt. no. 6.) On April 2, 2012, respondents moved to dismiss portions of the petition. (Dkt. no. 19.) Petitioner filed motions to strike portions of the petition and voluntarily dismiss other portions of the petition. (Dkt. nos. 34, 36, 37.) By order filed January 28, 2013, this Court struck from the petition: "(a) the equal protection portions of Grounds 2 and 4; (b) the entirety of Ground 3; and (c) the entirety of Ground 6." (Dkt. no. 40 at 2.) On May 28, 2013, respondents filed an answer to the remaining grounds of the petition. (Dkt. no. 44.) Petitioner has filed a reply. (Dkt. no. 45.)

## II. PETITIONER'S MOTION TO STRIKE EXHIBITS

On May 31, 2013, respondents filed a supplemental index of exhibits in which they presented two documents from petitioner's state court proceedings: (1) an order of the Nevada Supreme Court, dated October 8, 2012, affirming the denial of petitioner's motion to withdraw his guilty plea; and (2) the remittitur that followed. (Dkt. no. 47, Exh. 205 & 206.) Nearly two years later, on May 4, 2015, petitioner filed a motion to strike the supplemental exhibits. (Dkt. no. 48.) Petitioner's motion to strike is untimely. More importantly, there is no merit to petitioner's argument that respondents lacked "leave to

amend their pleading" as a basis for striking the supplemental exhibits. Supplemental exhibits 205 and 206 were presented by respondents as two documents from the state court record that were not available when respondents filed their original index of exhibits with the motion to dismiss in April of 2012. There is no basis for striking the supplemental exhibits. To the contrary, respondents fulfilled their duty of providing this Court with the state court record. Rule 5 of Rules Governing Section 2254 Cases in the United States District Courts; *see also* dkt. no. 5, Order filed October 14, 2011, at 2. Petitioner's motion to strike the supplemental exhibits is denied.

### III.    FEDERAL HABEAS CORPUS STANDARDS

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v.*

3

1  *Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694
2  (2002)). The formidable standard set forth in section 2254(d) reflects the view that
3  habeas corpus is "'a guard against extreme malfunctions in the state criminal justice
4  systems,' not a substitute for ordinary error correction through appeal." *Harrington v.*
5  *Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5
6  (1979)).

7        A state court decision is an unreasonable application of clearly established
8  Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court
9  identifies the correct governing legal principle from [the Supreme Court's] decisions but
10 unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v.*
11 *Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable
12 application" clause requires the state court decision to be more than merely incorrect or
13 erroneous; the state court's application of clearly established federal law must be
14 objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining
15 whether a state court decision is contrary to, or an unreasonable application of federal
16 law, this Court looks to the state courts' last reasoned decision. *See Ylst v.*
17 *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072,
18 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

19       In a federal habeas proceeding, "a determination of a factual issue made by a
20 State court shall be presumed to be correct," and the petitioner "shall have the burden
21 of rebutting the presumption of correctness by clear and convincing evidence." 28
22 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a
23 federal habeas petitioner must overcome the burden set forth in § 2254(d) and (e) on
24 the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400
25 (2011).

26 ///
27 ///
28 ///

## IV. DISCUSSION

### A. Ground One

Petitioner claims that his adjudication as a habitual criminal violated the Eighth Amendment's prohibition of cruel and unusual punishment. (Dkt. no. 6 at 3-6.) Petitioner presented this claim to the Nevada Supreme Court on direct appeal, and it was rejected, as follows:

> Christie argues that the life sentence is excessive. We disagree. This court has consistently afforded the district court wide discretion in its sentencing decision, see, e.g. Houk v. State, 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987), and we therefore will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). Moreover, regardless of its severity, a sentence that is within the statutory limits is not "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'" Blume v. State, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting Culverson v. State, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); see also Glegola v. State, 110 Nev. 344, 348, 871 P.2d 950, 953 (1994). Here, Christie does not allege that the district court relied on impalpable or highly suspect evidence or that the relevant statute is unconstitutional. Further, we note that the sentence imposed was within the parameters provided by the relevant statute. See NRS 207.010(1)(b).

(Exh. 91, at 3-4.)

The United States Supreme Court has held that the Eighth Amendment contains a "narrow proportionality principle." *Graham v. Florida*, 560 U.S. 48, 59-60 (2010) (internal quotation marks omitted). This principle "does not require strict proportionality between the crime and the sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotations omitted). Still, it is exceptionally difficult for a defendant to show that his sentence is unconstitutionally disproportionate. Several United States Supreme Court cases dictate upholding defendants' sentence, even where the sentence seems harsh in light of the offense committed. *See, e.g., Ewing v. California*, 538 U.S. 11 (2003) (upholding 25-year sentence of habitual criminal defendant for stealing three golf clubs, holding that the states may dictate how they wish to deal with recidivism issues); *Lockyer v. Andrade*,

538 U.S. 63 (50-years-to-life sentence for stealing $150 of videotapes upheld under California's three-strikes law); *Hutto v. Davis*, 454 U.S. 370 (1982) (40-year prison sentence upheld where defendant was convicted of possession with intent to sell nine ounces of marijuana); *Rummel v. Estelle*, 445 U.S. 263 (1980) (life sentence upheld where defendant was repeat offender and committed third felony of stealing $120).

In the instant case, petitioner was adjudicated a habitual criminal and sentenced to two concurrent terms of 10 years to life after he was convicted of grand larceny and burglary. (Exh. 37.) At sentencing, the prosecutor offered proof of four prior felony convictions for grand larceny, possession of stolen property, and two separate burglary convictions. (Exh. 35 at 4-5; Exh. 28 at 2-4.)[2] Petitioner's sentence is not grossly disproportionate to the crimes of which he was convicted. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied as to Ground One of the petition.

**B.     Ground Two**

In the order filed January 28, 2013, this Court struck the equal protection portion of Ground Two from the petition. (Dkt. no. 40.) In the remaining portion of Ground Two, petitioner claims that his adjudication as a habitual criminal violated his due process rights under the Fourteenth Amendment. (Dkt. no. 6 at 8-11.) Ground Two of the federal petition is a near verbatim copy of the claim presented in Ground One of the federal petition, with the only difference being the constitutional amendment upon which the claim is based. (*Compare* dkt. no. 6 at 3-6 *with* dkt. no. 6 at 8-10.) The argument

---

[2]Petitioner also had 13 additional misdemeanor and gross misdemeanor convictions, including convictions for conspiracy to commit burglary (two separate convictions), petty larceny (four separate convictions), shoplifting, failure to appear, indecent exposure, inflicting corporal injury on a spouse or cohabitant, conspiracy to commit grand larceny, failure to register, and failure to comply. (Exh. 28 at 2-4.)

presented in Ground Two is based mainly on state law and the Eighth Amendment. The Eighth Amendment claim was addressed in Ground One and discussed herein, *supra*. Petitioner presented the state law claim to the Nevada Supreme Court on direct appeal, although he did not make it clear that he was presenting a federal constitutional claim. The Nevada Supreme Court rejected petitioner's claim, as follows:

> Christie claims that the district court abused its discretion in declining to dismiss the habitual criminal allegation on the ground that his prior convictions were nonviolent and therefore did not warrant habitual criminal adjudication. We disagree. As we have recognized, in deciding whether to exercise its discretion to dismiss a habitual criminal allegation, the district court "may consider facts such as a defendant's criminal history, mitigation evidence, victim impact statements and the like." O'Neill v. State, 123 Nev. 9, 16, 153 P.3d 38, 43 (2007), cert. denied, 128 S.Ct. 153 (2007); see also Arajakis v. State, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992) ("NRS 207.010 makes no special allowance for non-violent crimes or for the remoteness of convictions; instead, these are considerations within the discretion of the district court."). Here, the district court admitted evidence of four prior felony convictions. And in declining to dismiss the habitual criminal allegation, the district court judge, who was familiar with Christie and his prior criminal history, observed that she had considered "all the factors possible in mitigation and . . . prior chances that [Christie had] had, the prior lectures that [Christie had] had, the prior chances from the State as well as [his] prior probation and parole terms" and determined that habitual criminal adjudication "will serve the purpose of discouraging [Christie] as a repeat offender." The record, thus, clearly demonstrates that the district court considered the relevant facts and did not abuse its discretion in declining to dismiss the habitual criminal allegation.

(Exh. 91 at 2-3.)

The arguments in Ground Two that are premised on state law are not cognizable in a federal habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The only reference to due process in Ground Two is petitioner's citation to *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995), a pre-AEDPA case in which the Ninth Circuit ruled that it was a violation of a petitioner's due process rights for the state trial court to adjudicate him a habitual criminal without making the required finding under Nevada law that it was "just and proper" to do so. (Dkt. no. 6 at 8; *Walker*, 50 F.3d at 673 (citing *Clark v. State*, 851 P.2d 426 (Nev. 1993)).)

Petitioner fails to present a meritorious claim based on *Walker v. Deeds*, 50 F.3d 670. First, *Walker* does not constitute clearly established federal law as determined by

the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Nevada Supreme Court is not required to apply *Walker* at all, nor do so reasonably. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Second, *Walker* is no longer good law. The Nevada Supreme Court ruled as follows in *Hughes v. State*, 996 P.2d 890 (Nev. 2000):

> The *Walker* court's interpretation of *Clark* is correct to the extent that it states that Nevada law requires a sentencing court to exercise its discretion and weigh the appropriate factors for and against the habitual criminal statute before adjudicating a person as a habitual criminal. However, nothing in *Clark* stands for the proposition that in meeting this obligation the sentencing court must utter specific phrases or make "particularized findings" that it is "just and proper" to adjudicate a defendant as a habitual criminal. The sole issue pursuant to *Clark* is whether the sentencing court actually exercised its discretion. While it may be easier to answer this question if the sentencing court makes particularized findings and specifically addresses the nature and gravity of the prior convictions, this court has never required the district courts to utter "talismanic" phrases. *See Bryant v. State*, 102 Nev. 268, 721 P.2d 364 (1986). Instead, this court looks to the record as a whole to determine whether the sentencing court actually exercised its discretion. Thus, as long as the record as a whole indicates that the sentencing court was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication and that the court exercised its discretion, the sentencing court has met its obligation under Nevada law.

*Hughes*, 996 P.2d at 893-94. In *Clark*, the decision to grant relief was based on the fact that it appeared that the sentencing judge in that case was operating under a misconception that habitual criminal adjudication was mandatory so long as the requisite felonies had been proven. *Hughes*, 996 P.2d at 892. The Nevada Supreme Court made it clear in *Hughes* that under Nevada law, adjudication as a habitual criminal is appropriate so long as the record as a whole indicates that the court properly understood the discretionary nature of habitual criminal adjudication and exercised its discretion. *Id.* at 893-94.

In the instant case, the record as a whole indicates that the sentencing judge understood that its decision to adjudicate petitioner a habitual criminal was discretionary, and not mandatory, and that it exercised its discretion in making that decision. The sentencing judge stated on the record: "The Court acknowledges that I have discretion." (Exh. 35 at 41.) The judge told petitioner that she had considered "all factors possible in mitigation," "the prior chances that you have had, the prior lectures

8

that you've had, the prior chances from the State as well as your prior probation and parole terms." (*Id.*) The sentencing judge then told petitioner that "I specifically find that you deserve to be declared a habitual criminal." (*Id.*) The Nevada Supreme Court's factual finding that the sentencing court had exercised its discretion and considered the relevant facts is supported by the record. Because the state trial court properly exercised its discretion under Nevada law, petitioner fails to show a violation of due process. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground Two of the petition.

### C.     Ground Four

In the order filed January 28, 2013, this Court struck the equal protection portion of Ground Four from the petition. (Dkt. no. 40.) In the remaining portion of Ground Four, petitioner claims that his due process rights were violated because he was not advised about the consequences of a failure to appear and his alleged breach of the plea agreement was not material. (Dkt. no. 6 at 19-23.) On direct appeal, the Nevada Supreme Court rejected petitioner's claim, as follows:

> Christie argues that the district court erred by allowing the State to withdraw from the original plea agreement after he failed to appear for sentencing. In particular, Christie claims that he was not advised that his failure to appear for sentencing would be considered a breach of the plea agreement. We conclude that this claim lacks merit. The original plea agreement clearly provided that the State could withdraw from the agreement and proceed on the original charges if Christie failed "to appear at any scheduled proceeding in this matter." Christie signed the agreement, which also stated that he understood that his failure to appear at any scheduled proceeding would constitute "a material breach" of the plea agreement. At the plea canvass, Christie further informed the court that he had read and understood the plea agreement and had no questions about it. And it is clear from the record that Christie breachedthe plea agreement — he failed to appear for the scheduled sentencing hearing. Under the circumstances, Christie cannot demonstrate error in the district court allowing the State to withdraw from the original plea agreement.

(Exh. 91 at 1-2.)

Petitioner's claim of a due process violation is belied by the record. The original plea agreement made it clear that petitioner's failure to appear at any scheduled proceedings would constitute a material breach of the plea agreement and that such a breach would entitle the prosecution to withdraw from the agreement. (Exh. 27 at 4.) Petitioner signed the agreement. (*Id.* at 6.) At the plea canvass, petitioner advised the court that he understood the agreement. (Exh. 7, Court Minutes of November 15, 2007.) There is no validity to petitioner's allegation that he was unaware of the consequences of a failure to appear.

The federal petition presents argument about how due process requires that a valid guilty plea be honored. (Dkt. no. 6 at 20-23.) The cited rules confirm that the outcome of this case was appropriate. The fact that petitioner's failure to appear would constitute a material breach of the agreement and permit the prosecution to withdraw from the agreement was an express term of the agreement itself. (Exh. 27 at 4.) Petitioner has not presented any clearly established federal law as determined by the United States Supreme Court that requires states to honor a plea bargain when the defendant has violated the express terms of the agreement. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied as to Ground Four of the petition.

**D.    Ground Five**

In Ground Five of the federal habeas petition, petitioner raises four claims of ineffective assistance of counsel. (Dkt. no. 6 at 25-31; dkt. no. 6-1 at 1-5.)

**1.    Standard for Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that counsel's representation fell below an objective standard of reasonableness,

based on prevailing professional norms. *Id.* at 688-90. Second, the petitioner must demonstrate that the identified acts or omissions of counsel prejudiced his defense. He must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a plea has been defined as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra*, and *McMann v. Richardson, supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial. *Id.; see also Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1997).

### 2. Ground 5(I)(A)(1)[3]

Petitioner claims that his trial counsel was ineffective for failing to advise him that it was a matter of certainty, rather than a mere possibility, that he would be adjudicated a habitual criminal. (Dkt. no. 6, at 27-31; dkt. no. 6-1, at 1.) Petitioner asserts that, because the sentencing judge warned him twice previously that she would adjudicate him a habitual criminal if he committed another felony, he had no real chance of avoiding habitual criminal adjudication and his attorney should have advised him against pleading guilty. (*Id.*) Petitioner presented this claim to the Nevada Supreme

///

---

[3]Ground 5(I)(B) of the federal petition argues prejudice based on the deficient performance of counsel alleged in Grounds 5(I)(A)(1) and (2). The Court will address prejudice to the extent necessary within the discussion of Grounds 5(I)(A)(1) and (2).

Court on appeal from the denial of his state habeas petition. The Nevada Supreme Court rejected the claim, as follows:

> [A]ppellant claims that counsel was ineffective for advising appellant to plead guilty rather than going to trial. Specifically, appellant claims that counsel should have advised him that the district court would impose the habitual criminal enhancement because the district court stated during two prior sentencing hearings involving appellant that she would adjudicate him a habitual criminal. Appellant fails to demonstrate that counsel was deficient. According to testimony by both counsel and appellant at the evidentiary hearing, counsel told appellant he might receive the habitual criminal enhancement but there was a chance it might not be imposed. Further, counsel informed appellant that if he went to trial and lost, he would be facing three convictions and three possible habitual criminal enhancements rather than the two he was facing by pleading guilty. Candid advice about the possible outcomes of pleading guilty and going to trial is not evidence of a deficient performance. Further, appellant was present at the prior sentencing hearings and knew that the district court judge had made statements regarding the habitual criminal enhancement. Therefore, the district court did not err in denying this claim.

(Exh. 181 at 3-4.)

Originally, petitioner reached an agreement with the State that would have permitted him to avoid habitual criminal adjudication. (Exh. 27 at 3-4.) However, petitioner failed to appear at sentencing and thus exposed himself to the habitual criminal enhancement. (Exh. 30; Exh. 35 at 2-4.) However, at the subsequent sentencing hearing, the trial court pointed out that the prior plea agreement was insufficient because petitioner had not been informed of the penalties for habitual criminal adjudication at the time he entered his original plea. (Exh. 35 at 7-9.) In response, the State moved to withdraw the negotiations and proceed on the original three charges. (*Id.* at 9.) Defense counsel asked for a break, and during the break petitioner executed an amended guilty plea agreement. (*Id.* at 10-12; Exh. 34.) Petitioner was canvassed and informed the court that it was his desire to leave the habitual criminal enhancement to the court's discretion and avoid going to trial on the additional charges. (Exh. 35 at 13.) The court accepted his plea and ultimately sentenced him as a habitual criminal. (*Id.* at 41.)

An evidentiary hearing on the subject of trial counsel's performance was held during petitioner's state habeas proceedings. (Exh. 133.) Trial counsel, Henry Sotelo,

1  testified at that hearing. (*Id.*) Trial counsel testified that he knew from the beginning that
2  petitioner "was at a high risk of being adjudicated an habitual criminal." (*Id.* at 7-8.) He
3  testified that after petitioner failed to appear for sentencing and the prosecutor stated
4  her intent to proceed on all of the original charges, they negotiated a deal under which
5  petitioner would plead to two felonies and the parties would be free to argue about
6  habitual criminal adjudication. (*Id.* at 27-28.) He testified that he informed petitioner of
7  the possibility of habitual criminal adjudication, and did not quantify petitioner's chances
8  of avoiding it. (*Id.* at 31.) Petitioner's trial counsel testified that petitioner never stated
9  that he would rather go to trial, but stated his desire to go forward and leave the
10 question of habitual criminal adjudication to the judge's discretion. (*Id.* at 33, 37.)

11 Petitioner also testified at the evidentiary hearing. (Exh. 133 at 38.) He testified
12 that trial counsel advised him against going to trial because if he did he would face the
13 possibility of three, rather than two, life sentences. (*Id.* at 39.) Petitioner also
14 acknowledged that he had been previously warned by the trial judge that she would
15 adjudicate him a habitual criminal if he appeared before her again. (*Id.* at 60.)

16 The Nevada Supreme Court cited to and reasonably applied the appropriate
17 federal standard to petitioner's ineffective counsel claims. Petitioner has failed to
18 demonstrate that his counsel's performance was deficient or that he was prejudiced
19 under *Strickland*. Petitioner has not shown a reasonable probability that, but for
20 counsel's alleged errors, he would not have pleaded guilty, but would have insisted on
21 going to trial. *See Hill v. Lockhart*, 474 U.S. at 58. Petitioner has failed to meet his
22 burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved
23 an unreasonable application of, clearly established federal law, as determined by the
24 United States Supreme Court, or that the ruling was based on an unreasonable
25 determination of the facts in light of the evidence presented in the state court
26 proceeding. This Court denies habeas relief as to Ground 5(I)(A)(1).

27 ///
28 ///

### 3. Ground 5(I)(A)(2)

Petitioner argues that his trial counsel was ineffective for failing to inform the court that he wished to withdraw his guilty plea. (Dkt. no. 6 at 30-31; dkt. no. 6-1 at 1.) Petitioner presented this claim to the Nevada Supreme Court on appeal from the denial of his state habeas petition. The Nevada Supreme Court rejected the claim, as follows:

> [A]ppellant claims that trial counsel was ineffective for failing to bring to the district court's attention that appellant had attempted to withdraw his guilty plea agreement by crossing out his signature after the district court struck a provision, which stated that the State would drop the habitual criminal count, because it conflicted with the rest of the plea agreement. Appellant testified at the evidentiary hearing that he would not have signed the amended plea agreement had he known that he faced habitual criminal treatment, and that he only signed the plea agreement because the provision that the State would drop the habitual criminal count was still in the amended guilty agreement. He claims that counsel should have informed the district court that he wanted to withdraw his plea when the provision was stricken and he crossed his name out.
>
> Appellant fails to demonstrate that counsel was deficient. The district court did not find appellant credible on this argument because appellant never manifested his dissatisfaction with the plea agreement even though he had ample opportunities to do so. Prior to the district court striking the provision in the guilty plea agreement, appellant stated at the hearing that, "I want to leave the habitual in your discretion and not go to trial on those other charges." Later, when the change was made, appellant was specifically canvassed regarding the change. The district court asked appellant, "I've directed counsel, both counsel, to initial another change which was on page 4 which specifically talks about the fact that they will not be dismissing the habitual offender enhancement. Do you understand that?" Appellant responded in the affirmative. Appellant fails to demonstrate that he wanted to withdraw from the plea agreement, that counsel knew that he wanted to withdraw, or that counsel was ineffective for failing to alert the district court that appellant wanted to withdraw. We conclude that substantial evidence supports the decision of the district court, see Riley v. State, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994), and therefore, the district court did not err in denying this claim.

(Exh. 181 at 2-3 (footnote omitted).) The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, the state court record supports each of the facts stated by the Nevada Supreme Court as the bases for its decision. Specifically, petitioner was canvassed by the trial court and did not express that he wanted to withdraw from the plea agreement. (Exh. 35.) During canvassing on February 14, 2008, petitioner unequivocally informed the trial court that he wanted to leave the issue of the habitual criminal enhancement to the court's discretion and avoid going to trial on the

14

additional charges. (*Id.* at 13.) Petitioner was specifically questioned about the modification to the plea agreement that placed the habitual criminal enhancement back on the table, and he stated that he understood it. (*Id.* at 22.) Petitioner's testimony to the contrary during his state habeas evidentiary hearing is belied by the record. (*Compare* Exh. 133, at 43-48, 71-78 *to* Exh. 35 at 13.) Petitioner has presented no other evidence that on February 14, 2008 — the date he was canvassed by the trial court — that he wanted to withdraw from the amended plea agreement or that he expressed that sentiment to anyone. Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has not shown a reasonable probability that, but for counsel's alleged errors, that he would not have pleaded guilty, but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. at 58. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court denies habeas relief as to Ground 5(I)(A)(2).

### 4.     Ground 5 (II)

Petitioner asserts that his trial counsel was ineffective for failing to argue against the habitual criminal enhancement on the basis that he was not afforded sufficient notice. (Dkt. no. 6-1 at 4.) Petitioner presented this claim to the Nevada Supreme Court on appeal from the denial of his state habeas petition. The Nevada Supreme Court rejected the claim, as follows:

> [A]ppellant claims that counsel was ineffective for failing to object to the habitual criminal enhancement based on lack of notice. Specifically, appellant claims that he did not receive notice that the State intended to seek the habitual criminal enhancement until a few days prior to sentencing. Appellant fails to demonstrate that counsel was deficient. The State filed the notice of intent to seek the habitual criminal enhancement on January 22, 2008, twenty-three days prior to appellant's sentencing hearing. Contrary to appellant's assertions, all NRS 207.016 requires is that the notice of intent be filed and that the sentence cannot be imposed,

> for fifteen days after the notice has been filed. NRS 207.016(2). Further appellant had notice that the habitual criminal enhancement would be considered. He was informed in his original plea agreement that if he did not appear for his sentencing hearing on January 17, 2008, the State would then be allowed to seek the habitual criminal enhancement. Therefore, the district court did not err in denying this claim.

(Exh. 181 at 4.) The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). The state court record supports each of the facts stated by the Nevada Supreme Court as the bases for its decision. (*See* Exhs. 32 & 35.) Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has not shown a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty, but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. at 58. Additionally, the Nevada Supreme Court's interpretation of NRS 207.016 cannot be challenged as a federal habeas corpus issue. *See Estelle v. McGuire*, 502 U.S. at 67-68. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court denies habeas relief as to Ground 5(II).

### 5. Ground 5 (III)

Petitioner asserts that his trial counsel was ineffective for failing to object to the habitual criminal enhancement on the basis that the amended guilty plea agreement listed only two of the three possible sentences. (Dkt. no. 6-1 at 4-5.) This claim was presented to the Nevada Supreme Court on appeal from the denial of petitioner's state habeas petition. The Nevada Supreme Court denied this claim, as follows:

> [A]ppellant claims that counsel was ineffective for failing to object to the habitual criminal enhancement because the amended guilty plea agreement only included two of the three possible penalties. Appellant fails to demonstrate that counsel was deficient or that he was prejudiced. While the amended guilty plea agreement did not include all of the potential penalties, appellant demonstrated that he knew what the penalties were because he recited them to the district court during the

16

> plea canvass, including the term of life with the possibility of parole. Thus, appellant had complete information as to all of the potential penalties prior to the district court accepting the plea. Counsel is not required to make futile objections, Donovan v. State, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978), and appellant fails to demonstrate a reasonable probability of a different outcome had counsel objected to the enhancement. Therefore, the district court did not err in denying this claim.

(Exh. 181, at 4-5.) The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner did, indeed, recite all of the possible penalties for habitual criminal adjudication to the court at the time he entered his plea. (Exh. 35 at 21.) Thus even if the amended guilty plea omitted one of the three possible penalties, the record is clear that petitioner understood them all. Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has not shown a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty, but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. at 58. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court denies habeas relief as to Ground 5(III).

## V.     CERTIFICATE OF APPEALABILITY

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that

1 reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's denial of the petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

## VI.  CONCLUSION

It is therefore ordered that petitioner's motion to strike (dkt. no. 48) respondents' supplemental exhibits is denied.

It is further ordered that the remaining grounds of the federal petition for a writ of habeas corpus are denied.

It is further ordered that petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of Court shall enter judgment accordingly.

DATED THIS 5th day of June 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE